IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK O, <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Respondent. | No. 19 CV 2891 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Claimant Mark O.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 13]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have filed cross-motions for summary judgment [ECF Nos. 19, 29] pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below,

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

Claimant's Motion for Summary Judgment [ECF No. 19] is denied and the Commissioner's Motion for Summary Judgement [ECF No. 29] is granted.

## PROCEDURAL HISTORY

On January 21, 2016, Claimant filed a Title XVI application for SSI alleging disability beginning on January 1, 2013. (R. 161–69). His claim was denied initially and upon reconsideration, after which he requested a hearing before an Administrative Law Judge ("ALJ"). (R. 87–91, 94–103). On January 3, 2018, Claimant appeared and testified at a hearing before ALJ Lana Johnson. (R. 15–38). ALJ Johnson also heard testimony on that date from impartial vocational expert ("VE") Susan A. Entenberg. (R. 38–41). On April 18, 2018, ALJ Johnson denied Claimant's claim for SSI. (R. 72–82).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since January 21, 2016, his protected filing date, until April 18, 2018, the date of the ALJ's decision. (R. 74). Although Claimant alleged a disability onset date of January 1, 2013, the ALJ noted that he only filed an application under Title XVI, meaning the ALJ adjudicates Claimant's functionality and potential functional limitations as of January 21, 2016 until the date of her decision. (R. 72). At step two, the ALJ found that Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c). (R. 74–75). Specifically, Claimant has a seizure disorder and cirrhosis of the liver. (R. 74–75). The ALJ also acknowledged a non-severe complaint of Wilson's disease but concluded

that this impairment was well-managed by conservative outpatient treatment and that it caused no more than minimal vocationally relevant limitations. (R. 75).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 75). In particular, the ALJ considered listings 5.05 and 11.02. (R. 75). Regarding listing 5.05, the ALJ concluded that Claimant did not meet or medically equal several requirements of that listing – he does not have varices with hemorrhaging, ascites or hydrothorax, spontaneous bacterial peritonitis, hepatorenal syndrome, hepatopulmonary syndrome, or hepatic encephalopathy, nor was there any evidence that he has end stage liver disease, hospitalizations for severe liver complications, rapid blood loss, or spontaneous liver infections, although the ALJ did acknowledge that diagnostic imaging shows Claimant has an abnormal liver. (R. 75). Claimant also did not, according to the ALJ, meet the requirements of listing 11.02 based on the record evidence surrounding his seizure disorder – indeed, when complaint with medication, the ALJ noted that he was essentially seizure free. (R. 75).

The ALJ then found Claimant had the RFC[3] to perform:

> "medium work as defined in 20 CFR 416.967(c) except he can never climb ladders, ropes, or scaffolds. He can frequently climb ramps and stairs. He can never be around unprotected heights, never operate dangerous heavy moving machinery, and never perform commercial driving." (R. 75).

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

3

Based on this RFC, the ALJ found at step four that Claimant did not have any past relevant work, as the record was devoid of earnings data or objective information to corroborate the work history as an electrician to which Claimant testified. (R. 80). At step five, the ALJ concluded that, considering Claimant's age, education, past work experience, and residual functional capacity, he is capable of performing other work within the national economy and that those jobs exist in significant numbers. (R. 80–81). Specifically, the VE's testimony, on which the ALJ relied, identified jobs at the medium exertional level including as a hand packer, dishwasher, and janitor. (R. 81). The VE additionally provided occupations at the light (cashier, sales attendant, hotel housekeeper) and sedentary (order clerk, sorter, assembler) exertional levels that were compatible with Claimant's RFC. (R. 81). The ALJ then found Claimant was not under a disability from January 21, 2016, the date Claimant's application was filed, through April 18, 2018, the date of her decision. (R. 82). The Appeals Council declined to review the matter on February 25, 2019, (R. 1–6) making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. 42 U.S.C. § 405(g); see, e.g., *Smith v. Berryhill*, 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, he or she bears the burden under the Social Security Act of bringing forth evidence that proves his or her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an

4

individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy."

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). Claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also,* 42 U.S.C. § 405(g); *Fowlkes v. Kijakazi,* 2021 WL 5191346, at *2 (7th Cir. 2021).

5

"[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. But even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not build a "logical bridge" from the evidence to the conclusion. *Wilder,* 22 F.4th 644 (citing *Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021)). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *see also, Gribben v. Kijakazi,* 2022 WL 59404, at *2 (7th Cir. 2022) ("We do not reweigh the evidence or resolve conflicts in it."). "[O]nly if the record compels a contrary result" will the court reverse the ALJ's decision. *Fowlkes*, 2021 WL 5191346, at *2 (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010)).

## ANALYSIS

Claimant argues two points of error on appeal. First, he claims the ALJ failed to adequately account for his diagnosis of Wilson's disease at step two, step three, and in the RFC. Second, he takes issue with the ALJ's evaluation of his subjective symptom statements. Neither argument is persuasive, for the reasons explained below.

## I. Claimant's Exertional and Non-Exertional Limitations and the ALJ's Step Two, Step Three, and RFC Assessments

As summarized above, Claimant contends that the ALJ erred at steps two and three of her analysis and that these failings snowballed into an RFC that did not adequately account for Claimant's exertional and non-exertional limitations. However, the Court sees no basis to find that the ALJ erred at either step two or three, or to conclude the RFC did not accommodate Claimant's limitations supported by the record. Remand is therefore not warranted.

### A. Step Two

At step two, an ALJ must address the "threshold issue" of whether the claimant has a severe impairment or combination of impairments. *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). As long as the ALJ finds one severe impairment, the ALJ then moves on to the remaining steps in the five-step analysis and considers "the entire constellation of ailments." *Castile*, 617 F.3d at 926–27 (quoting *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)). Here, the ALJ found two severe impairments: a seizure disorder and cirrhosis of the liver. (R. 74–75). This finding satisfied the threshold requirement at step two, after which the ALJ correctly moved through the remaining analysis. *See generally, Garza v. Kijakazi*, 2022 WL 378663, at *2 (7th Cir. 2022). She went on to evaluate all of Claimant's impairments – explicitly considering his diagnosis of Wilson's disease at step three (R. 75, 76) – before ultimately accommodating those conditions in the RFC.

7

Claimant specifically charges that it was "no surprise that the ALJ failed to factor in the limitations of Wilson's disease, given the misleading description she offered at Step 2." [ECF No. 20] at 8; *see also,* [ECF No. 31] at 2. This does not fairly capture the ALJ's step two determination that Claimant's diagnosis of Wilson's disease was not, in and of itself, severe. Indeed, the ALJ explicitly acknowledged that Claimant's Wilson's disease likely was a contributing factor to Claimant's seizure disorder and stated that its effects would be accommodated in that capacity in the RFC. (R. 75). She further explained her non-severe conclusion by noting that Claimant exhibited no signs of tremors in recent examinations and that his symptoms appeared to be well-managed by conservative, outpatient treatment and medication management. (R. 75) (citing R. 276, 417–21). The medical evidence supported this conclusion. The Court therefore sees no error warranting remand at step two.

### B. Step Three

Moving on to step three, Claimant argues that "when the ALJ considered the various listings applicable to seizures, she ignored the need to assess the paragraph B functional limitations in addition to physical limitations." [ECF No. 20] at 7. The listings detail "impairments that [the Social Security Administration] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a); see also, 20 C.F.R. § 404.1529(d)(3). It is Claimant's burden to show not only that his impairments meet a listing, but that his impairments satisfy all of the various criteria specified in the listing. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999); *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria,

8

no matter how severely, does not qualify."). To meet a listing is a "very high bar." *Garza*, 2022 WL 378663, at *2. When evaluating a claimant's condition and a listed impairment, an ALJ must discuss the listing by name and offer "more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2002); *Scott v. Barnhart*, 297 F.3d 589, 595–96 (7th Cir. 2003); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002)). However, the ALJ need not "name and discuss every Listing in their written decisions," *Wilder*, 22 F.4th at 652, nor does she need to mention every piece of evidence, so long as she builds a logical bridge from the evidence to her conclusion. *Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008).

Here, it is dispositive that Claimant identifies no specific listing he believes he meets, nor does he point to any evidence that the ALJ overlooked supporting listing level severity. *Gross v. Town of Cicero,* Ill., 619 F.3d 697, 703 (7th Cir. 2010) (courts do not consider a parties' factual assertions "that lack direct citation to easily identifiable support in the record"). While he generally complains that "[a]t Step 3, [the ALJ] telegraphed her misunderstanding of the nonexertional limitations that accompanied Plaintiff's impairments [and failed] to even address them when discussing the various applicable listings," he does not elaborate on the specific symptoms the ALJ failed to assess, nor the listing to which those symptoms might apply. To demonstrate that an ALJ's listing level analysis was not supported by substantial evidence, the claimant must identify misstated or ignored evidence of record that that met or equaled the criteria. *See, e.g., Sims v. Barnhart*, 309 F.3d 424, 429–30 (7th Cir. 2002). The claimant must also show that a more thorough step three

9

analysis could have led to a different outcome. *Jeske v. Saul*, 955 F.3d 583, 589–91 (7th Cir. 2020). Claimant has made neither showing here.

As it stands, the ALJ thoroughly evaluated listing 5.05 and listing 11.02 and determined that Claimant did not meet his burden of demonstrating how he meets or medically equals those listings. (R. 75). She listed several factors required for Claimant to meet either listing 5.05 or 11.02, and specifically described how claimant did not meet those requirements. (R. 75). This is enough. *Barnett,* 381 F.3d at 668 (the ALJ's analysis must be more than perfunctory); *see also, Wilder*, 22 F.4th at 653 ("neither the SSA's regulations nor the Social Security Act impose an affirmative obligation on ALJs to scour the Listings for a possible match, no matter how unlikely. Social Security Regulation 17-2p provides: 'If an [ALJ] believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment.' 2017 WL 3928306, at *4."). That no treating or examining physician identified findings equivalent in severity to the criteria of any listing also supports the ALJ's conclusion that Claimant did not meet or equal any listing, as is the fact that neither state agency consultant opined a listing level condition. *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009). It is Claimant's burden now – as it was at the hearing – to bring forward something more than conclusory statements that the ALJ "erred" at step three. Because Claimant has not done so, the Court will not overturn the ALJ's

reasoned conclusion that Claimant's impairments, considered both individually and in combination, did not meet or equal the criteria of listings 5.05 or 11.02.

### C. Claimant's RFC

An ALJ assesses a claimant's RFC between steps three and four of the five-step method for disability claims. See 20 C.F.R. § 416.945(a). Both the RFC assessment and the hypotheticals posed to the VE "must include all of a claimant's limitations supported by the medical record." *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) (citing *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)); *see also, Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015); Yurt v. Colvin, 758 F.3d 850, 857 (7th Cir. 2014). However, it does not follow that an ALJ's RFC analysis must also include a discussion of functional categories for which she has found no limitation. See, e.g., *Johnson v. Colvin*, 2014 WL 7336460, at \*4 (E.D. Wis. 2014) ("[T]he ALJ did not find any limitations at all, and as such it was perfectly sensible to leave the heart conditions out of the RFC entirely."). Ultimately, an ALJ need only include limitations that are supported by the medical record. *See, e.g., Deborah M.,* 994 F.3d at 791 (concluding the ALJ properly omitted manipulative limitation from RFC because "[n]o doctor who addressed Plaintiff's carpal tunnel syndrome ever deemed it a manipulative limitation").

As Claimant correctly highlights, the ALJ did not include any manipulative limitations in her RFC or in her hypotheticals to the VE. (R. 40–41, 75). But the ALJ did not, as Claimant charges, engage in "blatant cherry-picking" to arrive at that conclusion. [ECF No. 20] at 11. Instead, she left out the fingering and handling limitations for which Claimant now urges remand because she determined that they

11

were not supported by the medical record. The ALJ acknowledged that Claimant reported "chronic tremors" in his hands and that he testified to the same, but she pointed out the record reveals only two documented instance of mild tremors during the relevant period, and that these tremors were anomalies in the context of the longitudinal medical evidence.[4] (R. 76–77); (R. 275) (1/22/16) (noting a "slight postural tremor in his upper extremities"); (R. 415) (9/23/16) (noting a "mild postural tremor of outstretched hands"). Instead, Claimant's medical records reveal that at almost all of Claimant's objective medical examinations, no signs of tremors were noted – in fact, they were sometimes affirmatively disclaimed. (R. 77–78); (R. 349–50) (3/15/16) (physical and neurological examinations conducted, no mention of tremors); (R. 354) (6/22/16) (same); (R. 417) (2/7/17) ("There is no tremor, no asterixis and no finger-nose-finger dysmetria. Power normal in all 4 extremities and normal gait."); (R. 419–20) (10/17/17) ("Full power in all 4 extremities, no dysmetria or asterixis," no mention of tremors); (R. 421) (12/11/17) ("No drift, no dysmetria or asterixis. Power 5/5 all 4 ext.," no mention of tremors). Neither did the state agency consultants, or Claimant's own treating neurologist, for that matter, mention that Claimant had any manipulative limitations, let alone any that would be work-preclusive or that would require specific accommodation in the RFC. (R. 51, 64, 79–80, 415, 419, 421).

---

[4] In support of his argument, Claimant cites to another documented occurrence of mild tremors in 2014. [ECF No. 20] at 12 (citing R. 288). Another note in the medical evidence, to which Claimant did not cite but the Court independently observed, also stated that Claimant had "borderline vibration sensation in the extremities of uncertain significance" in 2015. (R. 363). However, this evidence falls far outside of the period of disability adjudicated by the ALJ, which Claimant does not challenge on appeal. (R. 72) (finding that because Claimant applied only for disability insurance under Title XVI, the relevant period is January 21, 2016 through the date of the ALJ's decision).

As for Claimant's non-exertional limitations – namely, his fatigue and memory difficulties – the ALJ similarly found that limitations in this area were not supported by the record. The ALJ acknowledged that Claimant asserted "disabling memory problems" but correctly contrasted this assertion with the "numerous" objective examinations at which Claimant was alert, oriented, and exhibiting an intact memory. (R. 76; (R. 415) (9/23/16) ("He is awake and alert he is oriented to month, day, date, year. He knows the president and candidates. Language including naming, repetition, attention were normal. Memory 3 over 3 immediately and 5 minutes later."); (R. 417) (2/7/17) ("He is awake and alert he knows the month day date and year. He is able to tell me the president and tell me a little bit of recent news although he did not know who won the Super Bowl. He is able to name objects and repeat phrases follow commands. He remembers 3 cities immediately only to a few minutes later."); (R. 418) (6/7/17) (Awake and alert knows month, day, date and year. Knows the name of the president. Names repeats and follows directions."); (R. 420) (10/17/17) ("general comfortable no distress. Awake and alert knows month, day, date and year. Knew recent news, knew death of Tom Petty (pt is a rock aficionado). Names, repeats and follows commands. Memory 3 over 3 immediately and 5 minutes later."). Although Claimant may disagree with the outcome, the ALJ supported her RFC restrictions with objective evidence drawn from the longitudinal medical record, as well as with, to varying degrees, the opinions of the state agency consultants and notes from Claimant's treating physicians. Therefore, because Claimant has not demonstrated that the ALJ ignored any specific limitations caused by his combined impairments, remand is not required.

## II. Claimant's Subjective Symptom Statements

Claimant next asserts that the ALJ improperly weighed Claimant's subjective symptom allegations and "waved away" most of Claimant's limitations. [ECF No. 20] at 11–12. He argues that the ALJ should have given more weight to the abnormal findings in his neurological records and less weight to the positive effect of medication compliance on his symptoms. But because the ALJ gave "specific reasons supported by the record" for discounting Claimant's subjective symptom statements and was not patently wrong in doing so, *Deborah M.,* 994 F.3d 789, the Court declines to overturn the ALJ's credibility determination.

As noted above, an ALJ's evaluation of a claimant's subjective symptom statements is afforded "special deference" and will be upheld unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *see also, Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). SR 16-3p[5] outlines a two-step process for an ALJ to follow when evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected

---

[5] Because the ALJ issued her ruling after March 28, 2016, SSR 16-3p, which superseded SSR 96-7p, applies here. But SSR 96-7p and SSR 16-3p "are not patently inconsistent with one another" – instead, a "comparison of the two Rulings shows substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms." *McCammond v. Colvin*, 2016 WL 3595736 at *3 (N.D. Ill. 2016). SSR 16-3p simply reaffirmed the focus on the regulatory language regarding symptom evaluation and clarified that the "subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p; *see also Cole v. Colvin,* 831 F.3d 411, 412 (7th Cir. 2016). The case law discussing both SSR 16-3p and SSR 96-7p therefore is informative on this point.

14

to produce his or her symptoms. SSR 16-3p, 2017 WL 4790249, *49463; *Wilder*, 22 F.4th at 654. Next, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2017 WL 4790249, *49464; *Wilder*, 22 F.4th at 654. "The ALJ must justify his or her subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and in doing so, must consider several factors, including the objective medical evidence, the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, *7-8 (Oct. 25, 2017).

Here, the ALJ concluded that Claimant's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the objective evidence, medical opinions of record, and Claimant's activities of daily living. (R. 76-78). She cited to numerous examples in the record in support of those conclusions, including examinations that revealed Claimant was alert, oriented, and with an intact memory, (R. 76), examinations that found no signs of tremor and no finger-to-finger dysmetria, (R. 76), and examinations where Claimant exhibited full range of motion, normal strength in his extremities, no focal deficits, no asterixis, no spider angiomata, and no palmar erythema, (R. 77), and neurology records that show Claimant is "essentially seizure free" when he is compliant with his medication (R. 76, 78). And, as the ALJ noted, even when Claimant was noncompliant with his seizure medication early in the relevant period of disability, in July of 2016, he

15

reported to his treating physicians that he had not suffered any seizures or loss of consciousness in the past six months. (R. 77). On the rare occasion Claimant did suffer from a seizure, the ALJ noted that Claimant's neurology progress notes reveal that his neurological functioning remained with normal limits. (R. 77–79).

It was not improper for the ALJ to consider that the medical evidence largely belied the severity of limitations Claimant described in his disability application and to which he testified at the hearing – indeed, an ALJ may view discrepancies with the medical record as probative of exaggeration. *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). Claimant's complaints of constant fatigue, disabling memory issues, uncontrolled seizures, severe hand tremors, and ongoing soreness and achiness were simply not borne out by the notes and records of his treating physicians. The ALJ was entitled to consider as much, for as the Seventh Circuit has emphasized, "[t]here is no presumption of truthfulness for a claimant's subjective complaints; rather, an ALJ should rely on medical opinions based on objective observations and not solely on a claimant's subjective assertions." *Knox*, 327 F. App'x at 655 (citing *Rice*, 384 F.3d at 371).

So too was it appropriate for the ALJ to consider that a "conservative course of treatment" – namely, compliance with a Keppra regimen to control Claimant's seizures and medication management for his Wilson's disease – was effective at treating Claimant's symptoms. (R. 76–77); 20 C.F.R. § 404.1529(c)(3)(v). The regulations specifically contemplate that an ALJ will consider a claimant's treatment history, 20 C.F.R. § 416.929(c)(3)(v), and the Seventh Circuit has affirmed that is appropriate. *See, e.g., Prill v. Kijakazi*, 23 F.4th 738, 752–53 (7th Cir. 2022)

16

("substantial evidence supports the ALJ's finding that pain medications adequately controlled [the claimant's] symptoms so she could perform medium work, subject to the restrictions detailed in the RFC assessment. The ALJ did not err in analyzing the effect of [the claimant's] use of hydrocodone on her ability to work."); *see also, Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (affirming an adverse credibility finding based on the claimant's "relatively conservative" treatment consisting of "various pain medications, several injections, and one physical therapy session.").

The ALJ also relied on evidence that Claimant's activities of daily living suggested he was not as disabled during the relevant time period as he portrayed himself to be. There are "limits on an ALJ's use of a claimant's daily activities to undermine assertions of disabling symptoms," *Prill,* 23 F.4th at 748, and the Seventh Circuit has "cautioned ALJs not to equate such activities with the rigorous demands of the workplace." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (citations omitted). "But it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Id.* (quoting *Loveless*, 810 F.3d at 508).

The ALJ properly looked to Claimant's daily activities to see if they corroborated his pain claims, and she found that they did not. She did not equate Claimant's activities – including that he did his laundry, house cleaning, car maintenance, dishwashing, shoveling, and grass-cutting, although lawn care made him fatigued – to full-time work. (R. 29, 76, 198–205). Rather, she noted that several of the above-described activities were not consistent with his claims that he suffered, for example, disabling fatigue and constant hand tremors. In particular, working

17

part-time as an electrician undercuts his claimed limitations related to handling and fingering because it is an activity that involves delicate hand movements that Claimant now argues he cannot perform, at least on a sustained basis. (R. 77, 345, 353); [ECF No. 20] at 10–11 ("As [Claimant] testified, he has hand tremors, and the more he uses his hands, the more unstable they become."). Nor did the ALJ impermissibly equate Claimant's part-time work as an electrician with the ability to sustain full-time employment; rather, she specifically considered this fact in the context of Claimant's physical functioning and as supportive of the objective medical evidence showing Claimant often presented with had a full range of motion, normal muscle strength, no hand tremors, and no neurological deficits at his medical examinations. (R. 77).

In sum, Claimant now offers the Court only vague and general assertions of disabling pain that are insufficient to overturn the ALJ's credibility determination on the standard of review before this Court. All that is required of the ALJ is that she explain her subjective symptom evaluation "in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (internal quotations omitted). The ALJ did so here, particularly given that credibility determinations are due special deference as factual findings. *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004).

## CONCLUSION

Accordingly, for all these reasons, Claimant's Motion for Summary Judgment [ECF No. 19] is denied and the Commissioner's Motion for Summary Judgement [ECF No. 29] is granted.

It is so ordered.

                                          Jeffrey T. Gilbert
                                          United States Magistrate Judge

Dated:    May 4, 2022